# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2855 | **DATE** | 2/19/2004 |
| **CASE TITLE** | Marley Mouldings Ltd vs. Mikron Industries Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continuied to 3/18/04 at 9:00 a.m. Parties joint motion to revise scheduling order is withdrawn. Mikron's motion for leave to file sur-reply to Marley's motion in limine seeking calculation of damages based on Mikron's pellet purchases and loadings is granted. Mikron's motion for leave to file a sur-reply to Marley's motion in limine to preclude Mikron from presenting testimony or any other evidence concerning reliance opinions of counsel to rebut Marley's claim of willful infringement is granted. For the reasons stated in the attached memorandum opinion and order, Mikron's motion for summary judgment of invalidity is granted. In light of the finding of invalidity, the parties' motions for summary judgment are denied as moot. Enter Memorandum Opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 20 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 126 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FEB 20 2004 | |
| | | date mailed notice | |
| MF | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLEY MOULDINGS LIMITED, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>MIKRON INDUSTRIES, INC., a Washington corporation,<br><br>Defendant. | No. 02 C 2855<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Marley Mouldings Limited ("Marley"), commenced a patent infringement action against Mikron Industries, Inc. ("Mikron") for the infringement of United States Patent 5,951,927 ("927 Patent"). Presently before the Court are Mikron's Motion for Summary Judgment of Invalidity, Mikron's Motion for Partial Summary Judgment of Noninfringement, and Marley's Motion for Summary Judgment of Literal Infringement.

FEB 2 0 2004

### BACKGROUND

The 927 Patent is directed to a method for making plastic extrusions that contain wood flour as set forth in the single independent claim 1. Claim 1 states:

> A method of forming a solid elongated member of predetermined profile for use as a door, window or frame molding, comprising the steps of:
>
> encapsulating wood flour particles with a polymer resin in an extrudable material by high intensity mixing, said extrudable material consisting essentially of, in parts (volume):
>     polymer resin:    in an amount up to 100
>     wood flour:       15-140

126

stabilizers: in an amount up to 5
lubricants: in an amount up to 5
process aids: in an amount up to 10,

extruding and cutting said extrudable material to form pellets of said extrudable material,

mixing additional polymer resin and a non-aqueous blowing agent with said pellets to form an extrudable foam material,

compressing said extrudable foam material at a compression stage by passage through an orifice, said orifice having at one end thereof a predetermined profile, said foam material consisting of, in parts (volume):

polymer resin: in an amount up to 100
wood flour: 15-140
stabilizers: in an amount up to 5
lubricants: in an amount up to 5
process aids: in an amount up to 10
blowing agents: .2 to 5

expanding said foam material through a shaper, said shaper having an internal solid surface defining a channel for said foam material, and solidifying said foam material to form a solid elongated member.

(Def.'s 56.1(a)(3) Statement ¶ 1).

Mikron manufactures or has manufactured polymer resin/wood flour extrusions which are cut to specified lengths for use in windows, frames, slats for window coverings, and window blinds. (Def.'s 56.1(a)(3) Statement ¶ 2). The composite extrusions are currently sold under the product name Mikronwood® XTR. (Id., ¶ 3). Marley asserts that Mikron's manufacture of its Mikronwood® XTR foamed wood flour and polymer extrusions constitutes infringement of Claims 1, 2, 3, and 5 of the 927 Patent. (Id., ¶ 4).

Claim 1 of the 927 Patent identifies a "foam material consisting essentially of, in parts (volume): polymer resin: in an amount up to 100...." (Def.'s 56.1(a)(3) Statement ¶ 5). Claim 1 also

recites that wood flour particles are encapsulated with polymer resin. (Plaint.'s 56.1(3)(b) Statement ¶ 1). The parties' technical experts disagree whether the lower bound of resin quantity to obtain a foamed extrudable product can be determined without undue experimentation. (Def.'s 56.1(a)(3) Statement ¶ 7). However, there must be some minimum quantity of polymer resin greater than zero parts by volume to obtain a foamed extrudable product. (Id., ¶ 8).

The 927 Patent does not specifically recite a method for calculating the volume of wood flour ingredient in the foam material. (Def.'s 56.1(a)(3) Statement ¶ A11; Plaint.'s Response to ¶ 11). The weight or mass of the wood flour listed in Claim 1 can vary in volume, depending on the bulk density. (Id., ¶ 12). The 927 Patent also does not specifically recite a method for measuring bulk density of wood flour ingredients. (Id., ¶ 13). Volume can be calculated by dividing bulk density by weight or mass. The minimum percent volume of wood flour the final formulation required for literal infringement of claim of the 927 Patent stays the same, 10.7 percent. (Plaint.'s 56.1(3)(b) Statement ¶ 5).

Experimentation, such as mixing a batch of a test formulation and running it through the extruder, is common in the extrusion industry to determine whether a given formulation will achieve the required characteristics of the end product. Such experimentation may take from several days to several weeks to determine the appropriate formula for a satisfactory product. (Plaint.'s 56.1(3)(b) Statement ¶ 2).

Marley's technical expert, Dr. Giacomin, stated that infringement can be evaluated by calculation of volume using both the highest and lowest bulk density values provided on a specification sheet from a wood flour supplier. (Def.'s 56.1(a)(3) Statement ¶ 16).

3

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

Mikron argues that the 927 Patent is invalid for failing to meet the requirements of the first and second paragraphs of 35 U.S.C. § 112: the specification does not "enable any person skilled in the art to which it pertains ... to make or use the [invention]," 35 U.S.C. § 112, ¶ 1; and the claims do not "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention," 35 U.S.C. § 112, ¶ 2. Enablement and definiteness are questions of law. *See BY Serv. Co. v. Halliburton Energy Serv., Inc.*, 338 F.3d 1368, 1371 (Fed. Cir. 2003) (*Halliburton*).

The enablement requirement set forth in paragraph 1 "is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (*AK Steel*). The specification need not "describe how to make and use every possible variant of the claimed invention, the artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments, depending upon

4

the predictability of the art." *AK Steel*, 344 F.3d at 1244. However, "when a range is claimed, there must be reasonable enablement of the scope of the range." *AK Steel*, 344 F.3d at 1244.

Whether a patent satisfies the enablement requirement depends upon the factual intensive inquiry regarding the amount of experimentation required. *See AK Steel*, 344 F.3d at 1244. Determining "what constitutes undue experimentation in a given case requires the application of a standard of reasonableness, having due regard for the nature of the invention and the state of the art." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (*Wands*). The quantity of testing is not determinative because a considerable amount of experimentation is permissible if such testing is routine or if the specification provides a reasonable amount of guidance to the direction in which the experimentation should proceed. *See Wands*, 858 F.2d at 737.

The definiteness requirement set forth in paragraph 2 "focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001). A claim is definite if one skilled in the art would understand the bounds of the claim when read in light of the specification. *See Exxon Res. & Eng. Co. v. United Sates*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (*Exxon*). A claim is indefinite if it "is insolubly ambiguous, and no narrowing construction can properly be adopted." However, a claim is sufficiently clear if "the meaning of the claim is discernable, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree." *Exxon*, 265 F.3d at 1375.

Words of degree in a specification often create definiteness problems. However, some imprecise claim language does not automatically render a claim invalid. *See Halliburton*, 338 F.3d

5

at 1372. "The question becomes whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification." *Halliburton*, 338 F.3d at 1372.

Mikron first contends that Claims 1, 2, 3, and 5 of the 927 Patent are invalid because they are not enabled for the full scope of the polymer resin quantity claimed. Specifically, Mikron contends Claim 1 of the 927 Patent is not enabled over the full range of the resin quantity for the specification of "in parts (volume): ... polymer resins: in an amount of up to 100 " because a foamed extrudable product cannot be obtained at the lowest end of the claimed range- zero parts resin. Marley counters that the claim is enabled because the range of polymer resin does not include zero.

Mikron's argument fails because the lowest claimed range, when read with the specification, does not include zero. Claim 1 recites that wood flour particles are encapsulated "with a polymer resin." In order for the wood particles to be encapsulated with polymer resin, the formulation must consist of at least some polymer resin. Without any polymer resin, encapsulation could not occur; and the recited claim language would be rendered meaningless. Accordingly, the lowest claimed range of polymer resin does not include zero resin.

Mikron concedes that the parties' technical experts dispute whether undue experimentation is required to determine the lower bound of resin quantity necessary to obtain a foamed extrudable product. Accordingly, Mikron's Motion for Summary Judgment of Invalidity based on the lack of enablement for the full scope of the polymer resin claimed is denied.

Mikron next argues that the written description is inadequate because it fails to describe how the volume of the wood flour in the foam material is to be measured.

Claim 1 requires that the ingredients be measured "in parts (volume)." Mikron contends that the method of determining parts volume of wood flour is not recited or described in the specification;

6

thus, the meaning of "parts (volume)" of wood flour is ambiguous and fails to enable one skilled in the art to make or use the invention.

Previously, this Court construed "in part (volume)" to mean the proportional volumetric quantity of one material component to all other components. "Volume" is defined as "space occupied or enclosed by cubic units (as inches, feet, quarts, pecks, bushels, gallons)," Webster's Third New International Dictionary 2563 (3rd ed. 1986), "the amount of space, measured in cubic units, that an object or substance occupies; the measured amount that a container or other object can hold," Random House Webster's College Dictionary 1461 (2nd ed. 1999).

The parties do not dispute that bulk density of a material can be used in determining the volume of a material. The parties also do not dispute that a given volume of wood flour can have a varying quantity of wood flour weight or mass according to the bulk density of the wood flour in the volume. Marley contends that one skilled in the art would know to use the bulk density range provided for a given material in the calculation to determine the volume of that material. Mikron used a range of bulk densities in determining the volume percent of wood flour in its products. Marley counters that it calculated the volume percent of wood flour in its product using an average bulk density for wood flour, even though there exists three bulk densities of wood flour – low, high and average – because the 927 Patent does not teach how to measure the volume component of wood flour.

Based on the above, a genuine issue of material fact exists as to whether one skilled in the art, after reading the specification, could practice the claimed invention, as to determining the manner of measuring or determining volume, without undue experimentation. Accordingly, summary judgment based on this issue is denied.

Lastly, Mikron contends that the 927 Patent is invalid because the claimed percent range of wood flour is indefinite. This Court previously found that the 927 Patent has a theoretical minimum percentage of wood flour in the final product of 10.7%.

Mikron asserts that the 927 Patent does not particularly point out and claim the subject matter of the invention; in particular, the bounds of the wood flour quantity in Claim 1 are not defined such that a person of ordinary skill would not know with certainty whether his actions were within the scope of Claim 1.

Both parties determined percent volume of wood flour using bulk density of the ingredients. The 927 Patent does not specify this is the correct method. Marley's expert evaluated the percent of wood flour in the final product, *i.e.*, literal infringement, by calculation of volume using both the highest and lowest bulk density values provided on the specification sheet from the wood flour supplier. Using Marley's expert's example of a foam material formulation with 5% wood flour/polymer pellets, coupled with the minimum bulk density of wood flour and the maximum bulk density of all other components, the volumetric percentage of wood flour in the foam material is 10.7%. In contrast, when the maximum bulk density of wood flour and the minimum bulk density of all other components is used, a volumetric percentage of wood flour in the foam material is 8.5%. Therefore, depending on which bulk density is used for each of the constituent ingredients, a different volume percentage of wood flour is obtained – one at the lower limit of the claimed range and one outside the claimed range.

Mikron's expert evaluated literal infringement by calculation of percent volume using the average bulk density values of the materials used because the 927 Patent does not indicate what value for bulk density is to be used nor how to determine the bulk density. Using the average bulk

8

density for the materials, the volume percentage of wood flour is 7.83% -- below the minimum value of 10.71%.

In the instant case, the parties agree as to the method of determining the bulk density and the mathematics required to calculate the percent of the wood flour as calculated from the weight or mass and bulk density of the material in question. However, the parties do not agree on the means of obtaining the percent volume of wood flour, or any of the other ingredients, given the fact that bulk densities generally have a range in value. This disagreement is critical because the percent of wood flour is determinative as to whether the process falls within the claim. As demonstrated above, under two of the methods, the process does not fall within the claim because the minimum percent of wood flour is below 10.7%.

The inventors did not specify the means to calculate the percent volume of the wood flour. Furthermore, the specification does not mention the different means of calculating the percent volume of wood flour or provide sufficient clues to discern which method is acceptable. The specification fails to provide any guidance as to what one of ordinary skill in the art would interpret the claim to require. Furthermore, because this determination is critical to discerning whether the final product has been produced by the claimed process, knowing the proper method of determining percent volume of wood flour is necessary to the practice of the invention. Under similar facts, the Federal Circuit has found invalidity pursuant to 35 U.S.C. § 112, ¶ 2. *See Honeywell Int'l, Inc. v. International Trade Comm'r*, 341 F.3d 1332, 1339-40 (Fed. Cir. 2003) (patent invalid for lack of definiteness because claim limitation could not be measured without knowing which of four different known sample preparation methods was to be used). *Cf., PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558 (Fed. Cir. 1996) (rejecting indefiniteness argument because all of the

conventional methods of testing claim limitation produced *essentially identical* results) (emphasis added). Based on the above, the 927 Patent is invalid pursuant to 35 U.S.C. § 112, ¶ 2.

Because the Court finds that the 927 Patent is invalid, it need not reach the issue of infringement.

## CONCLUSION

For the foregoing reasons, Mikron's Motion for Summary Judgment of Invalidity is granted. In light of the finding of invalidity, the parties' Motions for Summary Judgment are denied as moot.

Dated: February 19, 2004

JOHN W. DARRAH
United States District Judge